SIXTH DIVISION
April 13, 2007

No. 1-06-2274

| | | |
|---|---|---|
| In re MARRIAGE OF ANNA CARRILLO | ) | Appeal from the |
| | ) | Circuit Court of |
| (Anna Carrillo, | ) | Cook County |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Carlos Carrillo, | ) | Honorable |
| | ) | Grace G. Dickler, |
| Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE MCNULTY delivered the opinion of the court:

Before the trial in this divorce action, the trial court ruled on temporary custody of the minor children of Carlos and Anna Carrillo and set a schedule for visitation. After the trial but before entry of the final judgment, Carlos moved to hold Anna in contempt for violating the visitation order. The court left that motion unresolved at the time of the judgment that finally disposed of all issues concerning custody and property distribution. Six months later the court dismissed the motion for the contempt finding without hearing any evidence. Following that dismissal Carlos filed an appeal from the judgment and the order dismissing his motion for a contempt finding. We find that we have jurisdiction to review the final judgment as well as the denial of the motion for contempt. We affirm the judgment and reverse and remand for further proceedings on the contempt claim.

BACKGROUND

Carlos married Anna in 1988. They had four children: Carlos Jr., Enrique, Lilliana and Gabriel. Anna and Carlos separated in 2002. Carlos, who acted *pro se* throughout the divorce proceedings, agreed to entry of an order of protection against him in October 2002. Anna petitioned for divorce. Carlos opposed the petition, as he argued that divorce would not serve the best interests of the children.

He also petitioned for an order to protect him and the children from Anna. He alleged:

"Mrs. Carrillo frequently stayed out in bars while her husband took care of the children.

***

*** On September 29, 2002, Mr. Carrillo discovered an email that confirmed his suspicions of an affair. Several months earlier, he had found condoms, sex jelly, and sex candy in [Anna's] car."

The court appointed Dr. Peter Nierman to evaluate the family. Also, the court granted Carlos weekend visits with his minor children. But the court entered a new plenary order of protection, in effect for six months, directing Carlos to stay away from the family home.

As grounds for a motion for interim fees, Carlos alleged that, "despite the fact that Anna Carrillo is guilty of

infidelity, intimidation and many other crimes against [Carlos] and his children, she has enjoyed unparalleled protection under the law." Carlos separately petitioned for an injunction to "prohibit[] Anna Carrillo from carrying out her illicit affair *** in the presence of the children." The court denied Carlos's motions but reduced his temporary support payments.

On one of the support checks Carlos wrote, "proof that cheating and lying does pay"; on another he wrote, "adultery and false charges are rewarding to a woman."

Anna moved out of the family home in 2004, alleging that Carlos continued to harass her despite the order of protection. Judge Grace Dickler entered a third plenary order of protection on December 17, 2004, ordering Carlos to stay away from Anna's new home and her workplace. The order on its face provided that it would expire on December 17, 2006.

Carlos petitioned for a change of venue. The trial court treated the motion as a request for substitution of judge and assigned the motion to a different judge for disposition. That judge denied the motion. In February 2005 Carlos moved to reconsider the denial of the motion, relying on the "history of prejudicial rulings" against him. He also filed an affidavit in which he swore that his children told him "[Anna] and her lover were frequently fighting in front of [the children] ***. ***

[The lover] often got drunk when they argued." Carlos said that because of Judge Dickler's rulings, "the affair continued along with the mental abuse of [the] children." He added, "It is so frustrating to see the discriminatory legal system applaud [Anna's] infidelity and abuse of our family."

Also in February 2005, Carlos moved to vacate the order of protection. He alleged:

"Anna Carrillo's obsession with her lover has caused her to follow a reckless pattern of devastating acts of physical, mental and emotional abuse against [Carlos] and his children.

* * *

*** Anna *** [has] maliciously misused the domestic violence laws *** in order to freely pursue her adulteress lifestyle... an affair that started well before the part[ie]s separated."

Carlos admitted that he had approached Anna at work, but he characterized his behavior as "numerous acts of kindness." The court amended the order of protection to permit Carlos to contact Anna in case of a documentable medical emergency.

In an effort to divorce amicably, Anna offered to let Carlos have custody of their youngest son, Gabriel. Carlos Jr. had attained majority and Anna had already agreed to let Carlos have

custody of Enrique for the remainder of his minority, while he finished high school. Thus, Anna would retain custody of only Lilliana, an autistic and disabled child who needed nearly constant care. Anna asked only half the value of the marital home as part of the proposed settlement. Carlos accused Anna of trading Gabriel for money.

At a hearing in May 2005, Judge Dickler explained to Carlos her perspective on the case:

"[Y]our case *** is one of the most challenging I have ever had. You refuse to see what is really going on. You continue throwing darts at everyone. You refuse to get an attorney no matter how many times I pleaded with you to please hire an attorney in your best interests. You continue filing the same motions. You miscomprehend what is going on. You continually act in your child's opposite of best interests by involving them in these proceedings, telling them to write letters, *** and you continue this time after time after time."

In September 2005 Carlos petitioned for a rule to show cause why the court should not hold Anna in contempt for violation of visitation orders.

We have no transcript and no bystander's report for the

trial on the issues of custody and distribution of marital assets.  However, the record includes Dr. Nierman's report concerning the Carrillo family.  Dr. Nierman found:

"[N]either parent has conducted themselves in an exemplary fashion ***.  The constant strategy of making allegations, the inability to compromise, the legal protections, the lack of communication, and the failure to insulate children from the fracas are all poor prognostic signs for the future. ***

***

*** Gabriel is essentially a positive child who loves scouting and sports, has a good outlook on school, [and] loves both his parents ***.

*** Through his anticipations and expectations, it was clear his father was the more dominant parental figure as his father was truly functioning more as his guide through scouting, school, sports, video games, and friendships.  It was also clear that Gabriel preferred the arrangement of Lilly living with his mother while he was at his father's because this seemed the best situation for his belongings and his need for individualized attention. ***

* * *

*** Lilly seems well cared for and much loved by both parents.  There seemed to be consensus that Lilly was most frequently cared for by Anna but loved by all. *** Lilly has special needs in all domains including activities of daily living, transportation, [and] behavioral control ***.  She has seizures that can be frightening. ***

* * *

Carlos must realize that he cannot be of value to his children if he continues to engage Anna in inappropriate ways.  *** The battle must end. ***

***

*** Carlos and Anna both have indications for counseling. *** [Anna] would benefit from counsel on how best to parent during the teen years. ***

Carlos also requires significant supports and continued therapy. He reported that he was seeing *** a psychologist[] for anger management.  This is a good idea.  *** Carlos has continued to vent his rage inappropriately -- evidenced by his leaving verbally abusive recordings on Anna's phone.  Carlos must retreat from the engagement of Anna as his disloyal wife and come to a new relationship with her -- his co-

parent and the mother of his children. *** [A]ny and all behaviors that betray feelings of rage will only have a negative impact on his children.

In conclusion, the resolution that this evaluation calls for is to maintain a joint custody arrangement. ***

***

*** I am recommending Joint Custody for both Gabriel and Lilly. ***

Gabriel should reside with his father. ***

Lilly should reside primarily with her mother. ***

* * *

*** If Carlos leaves any threatening or rambling verbally abusive phone messages to Anna he would jeopardize the recommendations of this report and immediate forfeiture of custody should be considered. Similarly, these recommendations would be altered for any outbursts of anger or excessive physical punishment of the children by Anna. In both instances, the described behavior would indicate an inability to act in [the] children's best interest."

The attorney appointed to act as representative for the children largely supported Dr. Nierman's recommendations.

The court issued a memorandum opinion on November 30, 2005, following completion of the trial. According to the court:

"Carlos Jr. is not particularly positive as to the parenting abilities of either Mr. or Mrs. Carrillo. Carlos deems that his father is overly strict and inappropriately discusses Mrs. Carrillo's perceived shortcomings with the children. Alternatively, he deems that Mrs. Carrillo has an anger problem and has used excessive corporal punishment as a means of discipline.

***

*** Mr. and Mrs. Carrillo both love their children. *** [A]s between the two parents, Mr. Carrillo has a greater involvement in the educational welfare of the Carrillo boys. ***

*** Mr. Carrillo, Enrique and Gabriel have been primarily residing in the marital home and Lilliana has been primarily residing with her mother in Skokie. *** Gabriel spends occasional times in Skokie with Mrs. Carrillo, primarily when Mr. Carrillo is away from home on business trips.

* * *

*** Mr. Carrillo views himself as a victim in need

of vindication.  He has acted inappropriately and uncivilly at all stages of this litigation.  He believes that all forces have conspired against him. It is Mr. Carrillo's attitude that causes the difficulty in rendering a custodial decision in this cause.  This Court is cognizant of the fact that Mr. Carrillo plays a very important role in his children's lives and is an involved and concerned parent.  With regard to Gabriel, Mr. Carrillo is the parent that meets with the teachers and participates in extracurricular and scouting activities.  *** However, there is no doubt that Gabriel requires the positive involvement of both parents.  This Court is concerned that if Mr. Carrillo were awarded sole custody of Gabriel, he would continue to denigrate Mrs. Carrillo and speak negatively of her to Gabriel which, in turn, may ultimately cause Gabriel's alienation from his mother. ***

Conversely, this Court is likewise concerned as to an award of sole custody to Mrs. Carrillo.  *** Mrs. Carrillo has a history of an inability to control her anger.  She has used excessive corporal punishment against the two older boys and has employed

inappropriate and hurtful actions when attempts at discipline have failed.

* * *

Notwithstanding the behavior of the parties throughout these proceedings, this Court deems that an award of joint custody is warranted in this cause. ***

* * *

*** The Attorney for Petitioner is hereby ordered to prepare a Modification of the existing Order of Protection to allow the parties to freely communicate relative to issues affecting the children."

The order for joint custody of Gabriel and Lilliana allowed both parties liberal visitation with the children.

Within days after entry of the modification of the order of protection, Carlos left several messages for Anna on her answering machine, including a message left shortly after midnight on December 9, 2005. Following a hearing held on December 16, 2005, Judge Dickler entered a supplementary opinion modifying the November order. The court held:

"Mr. Carrillo called Mrs. Carrillo, after midnight, leaving a rambling message on her voice mail. Mr. Carrillo told Mrs. Carrillo that he was not going to let the matter end, that he was never going to stop

pursuing the matter and that the Court awarded him custody of Enrique just to punish him. ***

        ***

The hope of this Court that the orders contained in the Memorandum Opinion would help to dissipate Mr. Carrillo's anger was clearly misplaced. Mr. Carrillo's overwhelming concern is vindication and retaliation and not his children's best interest. *** Mr. Carrillo has clearly demonstrated that he is not capable of controlling his anger to allow the parties effectively [to] participate in a joint parenting arrangement."

The court awarded Anna custody of Gabriel and Lilliana, and the court reinstated the original order of protection, allowing Carlos to contact Anna only by e-mail. Judge Dickler also ordered Carlos to turn over to local police any firearms in his possession.

On January 9, 2006, Carlos moved for reconsideration of the ruling that followed the December 16 hearing. He separately filed a rule to show cause, alleging that Anna refused to comply with the order permitting him visitation with Lilliana from December 16 to December 18 and December 23 to December 25, 2005, and from December 30, 2005, through January 1, 2006, and January 7 to January 9, 2006. Carlos titled a third document an

"Emergency Motion to Continue the Trial" that had ended in November 2005.

At a hearing on January 18, 2006, the court first addressed the motion to continue the trial, construing it as a motion to reopen the proofs. Carlos said he wanted to question the children's representative and her assistant, "so we can clear up as to why she chose to follow the avenue she did in representing my children." After the parties argued Judge Dickler said:

"[Y]ou totally and completely ignore the fact that the Child's Representative recommended that you have joint custody of the children ***. And it was only through your own doing that unfortunately that could not take place. *** [Y]ou do not ever see when there's been an opinion or a recommendation in your favor."

The court denied the motion. Judge Dickler added:

"I do not have any additional time at this time. And I'm going to give you another date. However, if that is the only motion with regard to reopening proofs, I would like to have the judgment, please."

The judge rejected the motion to reconsider rulings at the December 16 hearing as premature because she had not entered the final judgment. Carlos tried to argue for his motion to show cause concerning the denial of visitation. Anna said, "Your

Honor, my daughter is 13 years old. *** She requires care as far as bathing and stuff. I don't think it's appropriate for her dad to be doing that type of stuff anymore." The judge warned Anna that she must comply with the visitation order, but the judge took no testimony and entered no disposition of the motion for rule to show cause. Instead the judge permitted Carlos to schedule a later hearing on his motions.

Judge Dickler signed an order dated January 18, 2006, formally dissolving the marriage and granting Anna custody of Gabriel and Lilliana with a specified schedule for visitation with Carlos. The order also finally apportioned the parties' assets and set the amount for Carlos to pay as child support during the minority of the children.

On January 30, 2006, the court entered an order setting schedules for responses and hearings on Carlos's outstanding motions for rule to show cause and to vacate the order of protection. In February 2006 Anna filed a response to the motion for a rule to show cause. She admitted that she denied Carlos visitation some days, but she did not recall the exact dates. Anna contended that the court effectively denied the motion to vacate the order of protection when it revised that order in the orders dated December 2005 and January 2006.

On February 10, 2006, the court granted Carlos an extension

-14-

of time, to March 7, 2006, for filing a postjudgment motion directed against the final judgment of dissolution entered on January 18, 2006. Carlos failed to file any such motion by March 7, 2006, and he filed no motion for a further extension of time. Instead, he filed his motion to reconsider the judgment after the expiration of the extended time for filing. The court dismissed the motion to reconsider, finding that it lost jurisdiction to reconsider the judgment on March 7, 2006. The court set the motion for a rule to show cause for a hearing on July 11, 2006.

On May 19, 2006, Carlos filed a motion seeking a ruling on all the motions the court left pending when it entered judgment on January 18, 2006. He claimed that the court had ruled on neither the motion for a rule to show cause nor the motion to reconsider the denial of the motion to vacate the order of protection.

At the hearing held on July 11, 2006, the court said that Carlos lost his right to raise his rule to show cause when he failed to present appropriate evidence at the trial that ended in November 2005. By order dated July 11, 2006, the court formally denied all motions outstanding in January 2006, finding that the motions merged into the judgment entered January 18, 2006. Carlos filed his notice of appeal on August 9, 2006.

Supreme Court Rule 306A (210 Ill. 2d R. 306A) directs us to

1-06-2274

expedite appeals in child custody cases.  Except for good cause, we must decide the appeal within 150 days after the filing of the notice of appeal.  Our supreme court designed the rule to serve the needs of children for finality and stability in custody arrangements.  See In re Marriage of Kostusik, 361 Ill. App. 3d 103, 108 (2005).  In this case the parties had not filed a record, let alone briefs, within 150 days of the filing of the notice of appeal.

On September 22, 2006, Carlos moved for an extension of time to file the record on appeal.  We granted an extension to October 31, 2006.  Carlos then moved for an extension of time to file a bystander's report.  We extended the time to December 15, 2006. The trial court refused to certify Carlos's proposed report because of its inaccuracy.  Anna did not submit a proposed bystander's report, and the trial court lacked time to create its own accurate report.  We denied Carlos's subsequent motion for additional time to obtain a bystander's report.  We set a deadline of January 22, 2007, for briefing.  Carlos asked for leave to file a supplemental record and for an extension of time for briefing.  We allowed the parties to move to supplement the record with any useful materials.  We set deadlines of February 20, 2007, for Carlos's brief and March 2, 2007, for Anna's brief. We finally received Carlos's brief on February 20, 2007.  Anna

-16-

replied with only a motion to dismiss the appeal. On February 1, 2007, Judge Dickler, without explanation, recused herself from the case.

ANALYSIS

We first address the question of our jurisdiction. The judgment of January 18, 2006, resolved all questions of custody and distribution of marital assets. Although Carlos received an extension of time for filing a postjudgment motion, he did not file a motion within the allotted time. Carlos claims that we have jurisdiction to review the judgment because some of his motions remained unresolved when the court entered the judgment on most issues, and the court added no language making the partial disposition appealable under Supreme Court Rule 304(a). 155 Ill. 2d R. 304(a).

On January 9, 2006, Carlos moved for a rule to show cause why the court should not hold Anna in contempt for violating the order permitting Carlos visitation with Lilliana on several specified dates after December 16, 2005. When Carlos raised the issue during the hearing on January 18, 2006, prior to the entry of the judgment order, Judge Dickler said she had no time to hear the motion that day. Instead she set a schedule for proceedings on the motion.

Anna filed a response in which she admitted that she had

sometimes denied Carlos visitation with Lilliana.  The court held no evidentiary hearing concerning the allegations of violations of court orders.  In the order dated July 11, 2006, Judge Dickler held that she had resolved the motion in the judgment dated January 18, 2006.  The scheduling of proceedings on the motion, together with Judge Dickler's express comments on the record of the hearing held January 18, show that she did not decide the motion for rule to show cause in the order of January 18.  The record shows no resolution of the motion prior to July 11, 2006.  Carlos filed his notice of appeal on August 9, 2006, less than 30 days after the final resolution of the last motion unresolved at the time of the entry of the judgment on January 18, 2006.

The motion for rule to show cause began contempt proceedings against Anna. See In re Marriage of Colangelo, 355 Ill. App. 3d 383, 388 (2005).  Those proceedings did not conclude until July 11, 2006, with the court's dismissal of the motion.  A party held in contempt may appeal the ruling even in the absence of language of an express finding of no just reason to delay enforcement or appeal. 155 Ill. 2d R. 304(b)(5); see In re Marriage of Nettleton, 348 Ill. App. 3d 961, 968 (2004).  However, Rule 304(b)(5) does not encompass the denial of a petition for rule to show cause.  A party aggrieved by denial of a petition for a rule to show cause in a contempt proceeding may immediately appeal the

-18-

denial only if the court expressly finds no just reason to delay appeal from the order. Colangelo, 355 Ill. App. 3d at 388; In re D.J.E., 319 Ill. App. 3d 489, 494 (2001). As parties cannot appeal the denial of a contempt petition prior to entry of a final judgment on all claims without Rule 304(a) language, the parties similarly have no right to appeal from a judgment final as to all other claims when a petition for a contempt finding remains unresolved, in the absence of Rule 304(a) language.

The trial court included no Rule 304(a) language in the order of January 18, 2006, which finally resolved all claims apart from the motion for a rule to show cause why the court should not hold Anna in contempt for violation of the visitation orders. Because the order of January 18 lacked language making it immediately appealable, it did not become appealable until the court entered its July 11 order denying the motion for a rule to show cause. Accordingly, we deny Anna's motion to dismiss the appeal. Our resolution of the jurisdictional question renders moot Carlos's motion to quash Anna's motion to dismiss.

We note the anomaly that, if the court had held Anna in contempt, our jurisdiction would apparently restrict us to review of the contempt finding. See Nettleton, 348 Ill. App. 3d at 968. Because the court denied the petition for a contempt finding, our jurisdiction extends to all issues resolved by the final

judgment. A revision of Rule 304(b)(5) to permit immediate appeal from denials of petitions for contempt might alleviate the oddity.

Carlos argues that the trial court erred by denying his motion for substitution of judge. We will reverse the trial court's findings on the motion only if the manifest weight of the evidence requires a different result. In re Marriage of Schweihs, 272 Ill. App. 3d 653, 659 (1995). In the motion Carlos pointed only to Judge Dickler's rulings as grounds for removing her from the case. A judge's rulings almost never constitute a valid basis for a claim of judicial bias. Eychaner v. Gross, 202 Ill. 2d 228, 280 (2002). The record shows us a judge trying hard to reach a just result despite a party's refusal to hire an attorney to help him present his arguments in legal form. As Judge Dickler noted, Carlos often refused to acknowledge the favorable rulings he received from the bench. We cannot infer bias from the order for Carlos to turn over firearms to the police. The refusal to sanction the children's representative for making legal arguments contrary to Carlos's arguments does not show bias. The fact that Judge Dickler in 2007 recused herself from the case does not show any error in the ruling on Carlos's motion for substitution of judge in 2005. Judge Dickler's comments and rulings here show a forthright confrontation with the issues in

1-06-2274

this particularly difficult case. The manifest weight of the evidence did not require the court to grant Carlos's motion for substitution of judge. See In re Marriage of Petersen, 319 Ill. App. 3d 325, 340 (2001).

Next, Carlos contends that the trial court erred by refusing to reopen the proofs so that he could elicit testimony from the child's representative and her assistant. To determine whether to permit a party to reopen a case, we consider:

"(1) whether the failure to introduce the evidence occurred because of inadvertence or calculated risk; (2) whether the adverse party will be surprised or unfairly prejudiced by the new evidence; (3) whether the new evidence is of the utmost importance to the movant's case; and (4) whether any cogent reason exists to justify denying the request." Polk v. Cao, 279 Ill. App. 3d 101, 104 (1996).

Carlos cites In re Marriage of Bates, 212 Ill. 2d 489 (2004), in support. In that custody dispute the trial court appointed a representative for the parties' minor child. Although the representative filed a written report concerning the child's interests, the court did not allow the parties to question the representative. The court relied on the report in its decision on custody. Our supreme court held that the trial

court denied the parties due process when it disallowed questioning of the representative because the representative had acted as a witness observing the relationship between the child and the parties. Bates, 212 Ill. 2d at 514.

In this case the representative made no report and did not act as a witness. Her assistant interviewed some of the psychologists who testified at trial, but the content of the interviews is hearsay and not admissible in evidence. Bong Jin Kim v. Nazarian, 216 Ill. App. 3d 818, 827-28 (1991). The court correctly barred inquiry into the issue of the representative's legal strategy. See People v. Spiezer, 316 Ill. App. 3d 75, 88 (2000) (evidence of attorney's strategy not discoverable). We find no abuse of discretion in the denial of the motion to reopen the proofs for this inadmissible evidence.

Carlos also objects to the January 18, 2006, judgment as procedurally improper and contrary to the manifest weight of the evidence. Because we have no record of the trial and we have no bystander's report, we cannot review the weight of the evidence. See Palanti v. Dillon Enterprises, Ltd., 303 Ill. App. 3d 58 (1999). However, we note that Judge Dickler followed Dr. Nierman's recommendations to the letter. In the order dated November 2005, the court granted Carlos custody of Gabriel, as Dr. Nierman recommended. In the order the court echoed Dr.

-22-

1-06-2274

Nierman's apprehensions.  Dr. Nierman wrote:

"The battle must end. ***

                    * * *

        If Carlos leaves any threatening or rambling

verbally abusive phone messages to Anna he would

jeopardize the recommendations of this report and

immediate forfeiture of custody should be considered.

*** [T]he described behavior would indicate an

inability to act in [the] children's best interest."

When Carlos's subsequent motions showed that he had no intention

of allowing the battle to end, the court, following Dr. Nierman's

recommendations, reallocated custody in a way that would protect

Anna's children from the effects of the rage Carlos continued to

express.  Carlos's acts had not occurred prior to the November

order, the evidence of those acts could not surprise him, and, in

light of Dr. Nierman's recommendations, the evidence had great

importance for the case.  The court did not abuse its discretion

by reconsidering the November order in light of Carlos's

subsequent actions. See Polk, 279 Ill. App. 3d at 104.

        Carlos contends that the court deprived him of due process

by entering pretrial orders of protection without allowing him an

opportunity to present evidence in opposition to the motions for

orders of protection.  The trial court revised the order of

-23-

1-06-2274

protection in force at the time in the final judgment entered after trial. Before entry of that order, Carlos had an opportunity to present evidence pertaining to the order of protection. We cannot now grant Carlos any effective relief from the pretrial orders to which he now objects. Therefore, we find the issue moot. See Steinbrecher v. Steinbrecher, 197 Ill. 2d 514, 522-23 (2001).

Finally, Carlos argues that the court should have heard evidence concerning Anna's violations of visitation orders before denying his motion for a rule to show cause why the court should not hold Anna in contempt. Before deciding a motion for a rule to show cause for indirect contempt, based on actions that occurred outside of court, the court should usually hear relevant evidence. Pryweller v. Pryweller, 218 Ill. App. 3d 619, 630 (1991). Carlos here adequately alleged a violation of the court's orders. We agree with Carlos that the court abused its discretion by dismissing the contempt proceeding without allowing Carlos to present evidence in support of his allegations. We reverse the dismissal of the motion for a rule to show cause.

Before entry of the judgment disposing of most issues in these dissolution proceedings, Carlos filed his motion for a rule to show cause why the court should not hold Anna in contempt for violation of visitation orders for late December 2005 and early

-24-

January 2006. Because the allegations of the motion concerned events that occurred after trial, Carlos had no opportunity to present evidence concerning those allegations at trial. The court explicitly denied Carlos's request for a hearing on the motion prior to the entry of the judgment on January 18, 2006. The court set the motion for hearing at a later date. Therefore, on January 18, 2006, the court had not disposed of all claims in the case. Prior case law shows that the denial of a motion for a contempt finding does not count as a separate proceeding for purposes of appeal; the aggrieved party may appeal the denial only if the trial court adds language making the decision immediately appealable under Supreme Court Rule 304(a). Because the trial court here did not add such language to the judgment disposing of all claims other than the contempt claim, the judgment of January 18 did not become appealable until the disposition of the contempt proceeding on July 11, 2006. The manifest weight of the evidence did not require the court to grant Carlos's motion for substitution of judge. The court correctly denied Carlos's motion to reopen the proofs so that he could elicit inadmissible evidence of attorney strategy. The court correctly considered evidence of Carlos's acts following the November 2005 opinion, as those acts had relevance to the custody determination. The inadequate record prevents us from

reviewing the manifest weight of the evidence presented at trial. However, the trial court should not have dismissed, without an evidentiary hearing, Carlos's motion for a finding of contempt against Anna for violation of visitation orders. Accordingly, we affirm the judgment for custody and property distribution, but we reverse the denial of the motion for a rule to show cause, and we remand for further proceedings not inconsistent with this opinion.

Affirmed in part and reversed; cause remanded in part.

FITZGERALD SMITH, P.J., and O'MALLEY, J., concur.