No. 2--06--0061          Filed: 10-16-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| DARRELL E. DUGGAN, | ) | of Carroll County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 01--D--67 |
| | ) | |
| TAMARA DUGGAN, | ) | Honorable |
| | ) | Val Gunnarsson, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The trial court entered a final judgment on respondent Tamara Duggan's postdissolution petition to increase child support, without making a finding under Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). The petitioner, Darrell Duggan, appealed. However, when he appealed, his own postdissolution petition regarding visitation was pending. We are thus required to examine whether we have jurisdiction over this appeal. Although we conclude that we do, our conclusion as to the basis for our jurisdiction requires some explanation before we proceed to the merits of the appeal.

Background

On January 17, 2002, the trial court dissolved the parties' marriage. The dissolution judgment included an agreement that Darrell would pay child support of $120 per week. In August 2005, Tamara petitioned to increase child support to reflect both a change in the statutory support guidelines for two children (compare 750 ILCS 5/505(a)(1) (West 2004) with 750 ILCS 5/505(a)(1)

(West 2002)) and an increase in Darrell's income. On that petition, the parties agreed to the entry of an order under which Darrell would pay "28% of net income every two weeks."

Twenty-six days after the court entered that judgment, Darrell moved to vacate it on the grounds that a support order should state a specific dollar amount instead of a percentage and that the wrong termination date had been entered. At the same time, he filed a petition to establish specific visitation times. On December 21, 2005, the trial court granted the motion to vacate in part and denied it in part, correcting the termination date but refusing to set a dollar amount for support. The court did not make a finding of appealability pursuant to Supreme Court Rule 304(a). Darrell filed his notice of appeal on January 18, 2006. The trial court did not resolve his petition to set specific times for visitation until May 23, 2006.

Jurisdiction and Retroactivity of Supreme Court Rule Amendments

Although neither of the parties to this appeal initially raised the issue of our jurisdiction, a reviewing court has a duty to consider sua sponte whether it has jurisdiction and to dismiss an appeal if it lacks jurisdiction. In re Marriage of Link, 362 Ill. App. 3d 191, 192 (2005). We therefore ordered the parties to submit supplemental briefing on this issue. Rule 304(a) requires a special finding by the trial court in order to appeal the final judgment on one claim when others remain pending before the trial court. Thus, if the two petitions were considered claims within the same action, we would lack jurisdiction because the December 21, 2005, order from which Darrell appeals disposed of fewer than all pending claims in this action, and there was no Rule 304(a) finding. In the supplemental briefs, Darrell argued that separate postdissolution petitions are best seen as new actions, so he could immediately appeal the final order resolving Tamara's child support petition under Rule 301 despite the pendency of his visitation petition. The alternate approach is to view

postdissolution petitions as stating new <u>claims</u> within the dissolution action, in which case there must be a Rule 304(a) finding in order to appeal a final order on one petition when another is still pending. For the reasons discussed below, we conclude that the latter view of postdissolution petitions as new claims rather than new actions is the appropriate one.

During our deliberations, however, the supreme court issued amendments to Rule 303(a), which governs the time for filing an appeal (see Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a)(2), eff. May 1, 2007). As amended, the rule acts to save appeals that would otherwise be premature by providing that, when a timely postjudgment motion has been filed, a notice of appeal filed before "the final disposition of any separate claim" does not become effective until the order disposing of the separate claim is entered. Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a)(2), eff. May 1, 2007. Thus, in order to decide whether we have jurisdiction over Darrell's appeal, we must first determine whether the amendments to Rule 303(a) should apply to all cases pending before the appellate court on the effective date, including this one (retroactive application), or only to those appeals filed after the effective date (prospective application).

In <u>Commonwealth Edison Co. v. Will County Collector</u>, 196 Ill. 2d 27, 39 (2001), Illinois adopted the retroactivity analysis contained in <u>Landgraf v. USI Film Products</u>, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). <u>Landgraf</u> set forth a two-part test. In the first step, a court must determine whether the legislature stated an explicit intent regarding retroactivity. If there is such an express intent it must be followed unless doing so would violate the constitution. <u>Allegis Realty Investors v. Novak</u>, 223 Ill. 2d 318, 330 (2006). If the legislative intent is not clear, the court must proceed to the second step, determining whether the amendments would have retroactive effect, that

is, whether application of the new law would "impair rights a party possessed when acting, increase[] a party's liability for past conduct, or impose new duties with respect to transactions already completed." Allegis, 223 Ill. 2d at 331. If the new law would have such an effect, the amendments cannot be applied retroactively. Allegis, 223 Ill. 2d at 331.

In Illinois, the legislature has enacted a default directive in section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2006)), which applies whenever there is no express intent regarding retroactive application contained in the amendments themselves. Section 4 provides that the amended version of a law may not be applied to any substantive matters, but may be applied to "the proceedings thereafter" (after the effective date of the amendments). 5 ILCS 70/4 (West 2006). Thus, the retroactivity analysis will never reach the second step of the Landgraf test: either the legislature will have spoken explicitly regarding whether the amendments should be retroactive, or the analysis will proceed under the default "intent" expressed in the Statute on Statutes, which translates as providing that amendments "that are procedural may be applied retroactively, while those that are substantive may not." Allegis, 223 Ill. 2d at 331.

Here, it is the supreme court and not the legislature that has amended Rule 303(a), and the supreme court has not stated specifically whether it intends those amendments to be applied to pending appeals. Supreme Court Rule 3(g) (210 Ill. 2d R. 3(g)) provides generally that the effective date of rule changes "shall be as ordered by the Supreme Court," and Rule 1 (134 Ill. 2d R. 1) provides that "[t]he rules on appeals shall govern all appeals," but these two rules still leave open the question of whether changes to rules should be applied to all appeals pending as of the effective date of the changes, or only appeals commenced after that date. Rule 2 (134 Ill. 2d R. 2) mandates that the rules "are to be construed in accordance with the appropriate provisions of 'An Act to revise

-4-

the law in relation to the construction of the statutes' [the Statute on Statutes (5 ILCS 70/1 et seq. (West 2006))]." Thus, section 4 of the Statute on Statutes guides our analysis and we turn to the task of determining whether the amendments to Rule 303(a) are substantive or procedural, and whether they apply to this appeal.

Under Illinois law, the amendments must be considered procedural, as they relate solely to the manner in which an appeal of the final judgment on one claim in a multi-claim case may be heard. "In general, procedural law is ' "[t]hat which prescribes the method of enforcing rights or obtaining redress for their invasion; machinery for carrying on a suit." ' [Citations.] *** More specifically, procedure embraces 'pleading, evidence[,] and practice. Practice means those legal rules which direct the course of proceedings to bring parties into court and the course of the court after they are brought in.' " Rivard v. Chicago Fire Fighters Union, Local No. 2, 122 Ill. 2d 303, 310-11 (1988). Since the amendments to Rule 303(a) are procedural, they ordinarily would apply to pending appeals. "If an amendatory act merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure even if they accrued prior to the change of law and the action was instituted prior to the amendment ***." Levy v. McKiel, 185 Ill. App. 3d 240, 242 (1989), citing Maiter v. Chicago Board of Education, 82 Ill. 2d 373, 390 (1980). The caveat is that even procedural amendments will not be applied retroactively when doing so would impair a "vested right," that is, a right that is sufficiently well established to be protected under the due process clause of the constitution. White v. Sunrise Healthcare Corp., 295 Ill. App. 3d 296, 298-99 (1998), citing First of America Trust Co. v. Armstead, 171 Ill. 2d 282, 289 (1996); Levy, 185 Ill. App. 3d at 242-43, citing Maiter, 82 Ill. 2d at 390-91. The facts of this case demonstrate that there are no vested rights at stake in this appeal.

"[A] right has not vested until it is so perfected, complete, and unconditional that it may be equated with a property interest." White, 295 Ill. App. 3d at 299, citing Armstead, 171 Ill. 2d at 290-91. A litigant may have a vested right in a "final judgment," as such a judgment is a form of property that is protected by due process from destruction or impairment by subsequent retroactive legislation. Arnold & Murdock Co. v. Industrial Comm'n, 314 Ill. 251, 255 (1924). However, the trial court judgment here is not a "final judgment" in that sense.

A judgment that is in the process of being appealed is not a "final judgment." "Under Illinois law, a judgment becomes a vested right of property once it is no longer subject to review or modification." (Emphasis added.) Evans v. City of Chicago, 689 F.2d 1286, 1296 (7th Cir. 1982), overruled on other grounds, 873 F.2d 1007 (7th Cir. 1989); see also Allegis, 223 Ill. 2d at 337 (the legislature infringed no protected rights by instructing that new legislation was to be applied to validate old tax levies because, "[w]hen the new law went into effect, the legal proceedings *** [regarding the levies] were not final" as the case was still pending on appeal). Thus, new procedural rules may be applied to pending appeals without interfering with a vested right. White, 295 Ill. App. 3d at 301 ("the judgment was not final while the review was pending, [and thus] the applicable law was that in effect at the time of the appeal"), citing Jacobson v. General Finance Corp., 227 Ill. App. 3d 1089, 1100-01 (1992). In sum, a litigant has " 'no vested right in the mere continuance of a law.' " Dardeen v. Heartland Manor, Inc., 186 Ill. 2d 291, 300 (1999), quoting Armstead, 171 Ill. 2d at 291.

Although we believe that a judgment that is pending on appeal is not a final judgment of the sort that gives rise to a constitutionally protected property interest, we are mindful of the supreme court's guidance in Commonwealth Edison Co. v. Will County Collector, 196 Ill. 2d 27, 47 (2001), that "the question is not simply whether the ' "rights" allegedly impaired are [labeled] "vested" or

"non-vested." ' [Citation.]" Instead, courts must make " 'subtle judgments concerning the fairness or unfairness of applying the new statutory rule' " to the particular cases pending before them. Commonwealth Edison, 196 Ill. 2d at 47, quoting Moore v. Jackson Park Hospital, 95 Ill. 2d 223, 242 (1983) (Ryan, C.J., specially concurring, joined by Underwood and Moran, JJ.). Thus, we look beyond "catchpenny phrases or the ambivalent concept of 'vested' " (2 N. Singer, Sutherland Statutory Construction §41.5, at 416 (6th ed. 2001)) to determine the fairness of applying the amendments to Rule 303(a) retroactively. We conclude that applying the amendments to Rule 303(a) to this appeal does not offend considerations of fairness and equity.

There is strong support for an approach that allows us to exercise jurisdiction in order to reach the merits of the case. As courts frequently state in ruling upon requests to vacate default judgments, our " 'determinations must be made within the framework of the legal philosophy that litigation should be determined on its merits if possible and according to the substantive rights of the parties.' " In re County Treasurer, 347 Ill. App. 3d 769, 774 (2004), quoting Zee Jay, Inc. v. Illinois Insurance Guaranty Fund, 194 Ill. App. 3d 1098, 1102 (1990); see also In re Marriage of Chesrow, 255 Ill. App. 3d 613, 621 (1994). This court has in the past lamented the unfairness of dismissing an appeal as premature far after the time in which the litigants could bring a new, timely appeal. See, e.g., In re Marriage of Capitani, 368 Ill. App. 3d 486, 491 (2006) (Gilleran Johnson, J., dissenting). Indeed, preventing this hardship is the very reason that the supreme court amended Rule 303(a):

"Subparagraph (a)(2) [the amendments at issue here] protects the rights of an appellant who has filed a 'premature' notice of appeal by making the notice of appeal effective when the order denying a postjudgment motion or resolving a still-pending separate claim is entered.

[Citation.] The question whether a particular 'claim' is a separate claim for purposes of Rule 304(a) is often a difficult one. [Citations.] Subparagraph (a)(2) protects the appellant who files a notice of appeal prior to the resolution of a still-pending claim that is [later] determined to be a separate claim under Rule 304(a)." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303, Committee Comments, eff. May 1, 2007.

In light of these comments, the amendments to Rule 303(a) may be regarded as curative. Curative amendments ordinarily should be applied to pending cases. See 2 N. Singer, Sutherland Statutory Construction §41.11, at 468-69 (6th ed. 2001).

In Landgraf, the Supreme Court discussed the overarching principles of fairness at work in determining whether to apply a new law retroactively. The Court held that new law could be applied retroactively where it did not "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Landgraf, 511 U.S. at 280, 128 L. Ed. 2d at 262, 114 S. Ct. 1505; see also Commonwealth Edison, 196 Ill. 2d at 38. The amendments to Rule 303(a) do not violate this test. The inapplicability of the last two factors is clear: the "saving" of a formerly defective appeal neither increases a party's liability for past conduct nor imposes additional duties relating to past transactions. The application of amended Rule 303(a) does not run afoul of the first factor, either, as it does not impair the rights that either party possessed when he or she acted. The special concurrence suggests that our ability to hear this appeal under the new Rule 303(a) impairs Tamara's "right" to a dismissal of the appeal for lack of jurisdiction. If this is a "right" at all, however, it is not a right that Tamara "possessed when she acted," as she has taken no action in reliance on our initial lack of jurisdiction. Indeed, she did not even raise the issue of our jurisdiction until we required her to do so via supplemental

briefing. This fact is not simply an accident of the parties' skill in recognizing jurisdictional defects: it highlights the nature of jurisdiction--it is not a right possessed by the parties, but a prerogative of the court that we assert and determine. See Landgraf, 511 U.S. at 274, 128 L. Ed. 2d at 258, 114 S. Ct. at 1502 ("jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties' [Citation]").

In Stephens v. Cherokee Nation, 174 U.S. 445, 43 L. Ed. 1041, 19 S. Ct. 722 (1899), the plaintiffs had obtained a judgment regarding tribal citizenship from a United States court in the Indian Territory. At the time, the decisions of that court regarding citizenship were unreviewable. A new statute subsequently made such judgments reviewable by the Supreme Court, and the plaintiffs appealed. The Supreme Court held that the new law could be applied to the previously unreviewable judgments without abrogating a vested right: the mere expectation that a judgment was insulated from review did not rise to the level of a vested right. Stephens, 178 U.S. at 478, 43 L. Ed. at 1053, 19 S. Ct. at 734.

Similarly, here the "right" that the special concurrence argues Tamara possesses under the old law but not the new is merely the dubious "right" to shield a potentially erroneous judgment from review. If the trial court judgment that a litigant has obtained is correct, then it will be affirmed and appellate review will not deprive that litigant of anything. If, on the other hand, the trial court judgment is incorrect, then the interests of justice require that it be corrected. In those circumstances, the interests of fairness mandate that no party should be required to bear the burden of an erroneous judgment when a reviewing court has the power to correct it. Of course, the court's power to correct erroneous judgments is not unlimited: if an erroneous judgment is not appealed, then it remains a final judgment not subject to review. But a court has the power (i.e., jurisdiction)

to determine whether it has jurisdiction (People ex rel. Adamowski v. Dougherty, 19 Ill. 2d 393, 399 (1960)), and that determination is made at the time of decision, not when the appeal is initially filed. It does not serve the interests of justice to refuse to reach the merits of an appeal that is pending before a court of review on the basis that doing so would interfere with a party's interests in shielding an erroneous judgment.

The application of this principle to the case before us illustrates the point. As we shall discuss, the trial court's ruling here was directly contrary to the mandates of the child support statute (750 ILCS 5/505 (West 2004)). The trial court's erroneous judgment did not give rise to a constitutionally protected right, and its reversal does not deny Tamara due process. With no vested right at issue here, we must follow the mandate of the Statute on Statutes and apply the procedural law in place at the time of decision.

As Justice Scalia has noted, changes in the law can affect the outcome of cases even where the new law is purely procedural. Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 853, 108 L. Ed. 2d 842, 864, 110 S. Ct. 1570, 1585 (1990) (Scalia, J., concurring). Nevertheless, courts regularly apply new procedural law to pending cases, even where doing so results in a different outcome. See, e.g., Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 21 L. Ed. 2d 474, 89 S. Ct. 518 (1969) (tenant was evicted under former regulations and eviction was upheld on appeal; while case was pending before the Supreme Court a new procedural rule was enacted; Supreme Court reversed eviction on the ground that landlord had not complied with the new rule); Allegis, 223 Ill. 2d at 335-36 (applying new law that was passed while case was pending before supreme court, validating past road taxes of previously questionable validity); Kenfield-Leach Co. v. Industrial Publications, Inc., 320 Ill. 449, 450 (1926) (applying new procedural law, enacted

after the conclusion of the appeal, permitting the supreme court to take the case and reverse the prior judgment); People ex rel. Madigan v. Petco Petroleum Corp., 363 Ill. App. 3d 613, 619-21 (2006) (retroactively applying amendments to Rule 274 that permitted that court to exercise jurisdiction over an appeal instead of dismissing it as untimely filed); Schweickert v. AG Services of America, Inc., 355 Ill. App. 3d 439, 444 (2005) (retroactively applying new procedural law regarding the perfection of liens and reversing trial court judgment); People ex rel. Bernardi v. City of Highland Park, 225 Ill. App. 3d 477, 480 (1992) (deletion of requirement that section 2--611 motions be filed within 30 days of the judgment was retroactive, permitting trial court to consider motion over which it otherwise would not have had jurisdiction); Board of Managers of Dominion Plaza One Condominium Ass'n No. 1-A v. Chase Manhattan Bank, N.A., 116 Ill. App. 3d 690, 693-94 (1983) (applying a procedural statute that took effect after the trial court's judgment but before the appeal was filed).

By contrast, the only cases in which a new amendment that was arguably procedural in nature was not applied to a pending case are cases relating to statutes of limitation, such as Henrich v. Libertyville High School, 186 Ill. 2d 381 (1998), and Arnold Engineering, Inc. v. Industrial Comm'n, 72 Ill. 2d 161 (1978). Statutes of limitation are not the same as jurisdictional rules, however, in that Illinois courts have held that statutes of limitation give rise to vested rights. See Sepmeyer v. Holman, 162 Ill. 2d 249, 255 (1994) (the ability to raise a particular affirmative defense such as the expiration of the statute of limitation is a right that "vests" at the time the cause of action arises). Unlike statutes of limitation, the rules of appellate jurisdiction do not give a party a defense or right that is protected under the Illinois Constitution. Thus, we disagree with the holding reached in Barter v. Slayback, 235 Ill. App. 3d 18 (1992), in which the Fifth District held that an amendment to a

supreme court rule, which would allow the hearing of an appeal that would have been untimely under the old rule, was comparable to an amendment to a statute of limitation and therefore could not be applied retroactively to save pending appeals.

The application of the amendments to Rule 303(a) to this appeal is in accord with substantial precedent, interferes with no protected right, and best serves the interests of justice. We conclude, therefore, that the amendments should be applied retroactively.

Accordingly, we turn to the application of the amended Rule 303(a) to this appeal. Darrell filed a timely postjudgment motion, and thus, under the amended Rule 303(a) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a), eff. May 1, 2007), Darrell's notice of appeal was not effective until the trial court resolved the pending visitation petition on May 23, 2006. At that point, the notice of appeal became effective, the appeal commenced, and we had jurisdiction over the appeal.

Postdissolution Petitions as New Claims, Not New Actions

We could have reached the same conclusion regarding our jurisdiction over this appeal if we had adopted Darrell's argument that each postdissolution petition commences a new action. However, for the following reasons we believe that postdissolution petitions such as those brought by Tamara and Darrell are appropriately treated as new claims within the dissolution action. This approach enables the trial court to better serve the needs of families caught up in the often-painful aftermath of divorce by considering all of the relevant pre- and postdissolution proceedings together, rather than in isolation, and is consistent with the previous decisions of Illinois courts. We therefore reject Darrell's argument that postdissolution petitions are new actions, so that a final judgment on one petition would be appealable under Rule 301 without the need to invoke Rule 303(a) or 304(a),

and instead hold that we have jurisdiction over this appeal under Rule 303(a) (saving premature appeals filed during the pendency of other claims).

Under Supreme Court Rule 301, "[e]very final judgment of a circuit court in a civil case is appealable as of right." 155 Ill. 2d R. 301. However, Rule 304(a) adds a qualification to Rule 301, at least as to the timing of appeals from certain final judgments. Under Rule 304(a), "[i]f multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." 210 Ill. 2d R. 304(a). Thus, many final judgments are immediately appealable only if the trial court makes the proper finding. By the rule's own terms, a Rule 304(a) finding can confer appealability only on a judgment that is already final. 210 Ill. 2d R. 304(a); see also Revolution Portfolio, LLC v. Beale, 332 Ill. App. 3d 595, 598-99 (2002).

Postdissolution proceedings (in which a party seeks to modify, enforce, clarify, or terminate some aspect of the judgment of dissolution) present an unusual situation in civil practice. The trial court enters a final judgment resolving all of the issues at the time of the dissolution, but that judgment may subsequently be modified--repeatedly--at the request of the parties. The question we consider here is whether such postdissolution petitions are best seen as new claims, in which case Rules 303(a) and 304(a) govern the appealability and timing of appeals, or as new actions, in which case Rule 301 governs. We begin by examining the application of Rule 304(a) in pre- and postdissolution proceedings.

Prior to the entry of a judgment of dissolution, the application of Rule 304(a) in a dissolution case is almost nonexistent. In In re Marriage of Leopando, 96 Ill. 2d 114, 119 (1983), the supreme

court held that a petition for dissolution presents only one claim, a claim for dissolution. The issues that the court must decide during the course of a dissolution, such as child custody, property division, and maintenance, are considered ancillary issues within that one dissolution claim. "They do not represent separate, unrelated claims; rather, they are separate issues relating to the same claim." (Emphasis in original.) Leopando, 96 Ill. 2d at 119. The supreme court held that all these issues were part of one claim because of their interdependence: "[I]t is difficult to conceive of a situation in which the issues are more interrelated than those involved in a dissolution proceeding." Leopando, 96 Ill. 2d at 119.

Under Leopando, prior to the entry of the judgment of dissolution, only one claim exists in a dissolution proceeding. Therefore, because Rule 304(a) applies only when multiple claims exist, a Rule 304(a) finding cannot properly be entered. As a result, a party to a dissolution case generally may not appeal from the trial court's ruling on a particular issue until the entry of the judgment of dissolution resolving all of the predissolution issues. See Leopando, 96 Ill. 2d at 119.

Not long after Leopando, the supreme court addressed the appealability of a final order on a petition filed after the judgment of dissolution in In re Custody of Purdy, 112 Ill. 2d 1 (1986). The issues raised in Purdy were (1) whether postdissolution petitions raise new claims or simply issues within one claim similar to predissolution proceedings under Leopando; and (2) under what circumstances a final order adjudicating a postdissolution petition may be appealed.

In Purdy, the ex-husband brought a postdissolution petition for change of custody. The trial court granted it, and at the same time granted the ex-wife visitation on alternate weekends and holidays. The court left for later resolution the summer visitation schedule. Purdy, 112 Ill. 2d at 3. The trial court included a finding under Rule 304(a) in its order, and the ex-wife appealed. Relying

on Leopando, the appellate court dismissed the appeal on the ground that the summer visitation schedule was part of the same, single claim as the custody modification, and thus there was no final order that could be appealed pursuant to Rule 304(a).

The supreme court reversed the appellate court's dismissal, stating that Leopando does not govern postdissolution proceedings. Purdy, 112 Ill. 2d at 5. Once the judgment of dissolution is entered, later petitions are no longer part of the predissolution claim. Instead, the supreme court described the ex-husband's petition for change of custody as raising a separate claim, and held that a judgment on that petition was final and could be appealed pursuant to Rule 304(a). Purdy, 112 Ill. 2d at 5. Because the trial court had entered a Rule 304(a) finding, the custody order was appealable, and the supreme court remanded the case to the appellate court for a decision on the merits.

Although Purdy clarified that postdissolution petitions are not part of the unitary predissolution claim and that judgments on such petitions are therefore separately appealable in some situations, it did not address whether postdissolution petitions are best viewed as new actions or as new claims in the dissolution action. For the following reasons, we conclude that postdissolution petitions raise new claims in the dissolution action.

The question of whether a postdissolution petition begins a new action has not been confronted directly, but has been addressed in the context of a party's request for a substitution of judge as of right. Such a substitution--formerly called a "change of venue"--is available only when the judge has not made substantive rulings in the action. See 735 ILCS 5/2--1001(a)(2)(ii) (West 2006) (and predecessor provisions). In divorce cases, for many years the rule was that a new request for a substitution of judge could be made after each new postdissolution petition, because each petition started a new action.

This rule originated more than a century ago in a Fourth District case, McPike v. McPike, 10 Ill. App. 332 (1882).[1] The McPike court defined an "action" or a "suit" as a proceeding to establish the existence of an alleged right or the right to redress for a purported injury. McPike, 10 Ill. App. at 333-34. Reasoning that the modification of custody and of alimony were rights for which Illinois statutes specifically provided, it held that a petition for modification of alimony fell within the definition of an action and thus should be treated as if it were a new case for substitution of judge purposes.

The McPike rule was squarely rejected by the supreme court in In re Marriage of Kozloff, 101 Ill. 2d 526 (1984):

"This court has long condemned a litigant's attempt to seek a change of venue after he has formed an opinion, based upon the court's adverse rulings, that the judge may be unfavorably disposed towards his cause. [Citations.] Under the [McPike] rule, however, a change of venue can be sought on any post-decree petition if the litigant is dissatisfied with the judge's prior rulings on other, related petitions despite the fact that all of the petitions emanate from

---

[1]Appellate court opinions entered before 1935 are not binding precedent in Illinois courts. Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 95 (1996). However, although McPike itself is not precedential, its influence on later precedential cases is clear. See, e.g., In re Marriage of Cummins, 106 Ill. App. 3d 44, 48 (1982) ("It has long been the rule in the appellate courts that a post-dissolution proceeding *** is a 'suit or proceeding' under the venue act"; citing McPike and other cases); Sipich v. Sipich, 80 Ill. App. 3d 883, 890 (1980) ("Illinois courts are in agreement that a petition to modify a previous divorce decree *** constitute[s] a new proceeding and is, therefore, subject to the statutory change of venue provisions" (emphasis omitted); citing cases).

the same dissolution proceedings. *** Obviously, such maneuvering is anathematical to the efficient use of judicial resources. [Citations.] Accordingly, we hold that post-decree petitions do not constitute new actions, but merely continuations of the dissolution proceeding, and a substantive ruling on one petition will preclude a change of venue as of right on another." Kozloff, 101 Ill. 2d at 530-31.

Thus, the supreme court has enunciated clearly its own view of postdissolution petitions as stating new claims within the dissolution action rather than commencing new actions.

Although the context for Kozloff is the prevention of judge-shopping, its holding cannot be confined to that context. The supreme court's concerns about judge-shopping are based on a view of postdissolution proceedings as an extension of the original dissolution action, involving the same litigants and the same procedural history. See Kozloff, 101 Ill. 2d at 531 (noting that "all of the petitions emanate from the same dissolution proceedings" and characterizing prior rulings on other pre- and postdissolution petitions as "related"). Indeed, there would be no need to prevent judge-shopping if each postdissolution petition really were a separate action from the original dissolution and other postdissolution proceedings, and could neither affect nor be affected by those other proceedings. The supreme court did not limit Kozloff's holding by suggesting that postdissolution petitions are continuations of the dissolution proceeding only for purposes of changes of venue, and we may not read any such limitation into the holding.

The Kozloff rule reflects the realities of postdissolution proceedings, in which the parties may seek to modify a judgment of dissolution numerous times, whenever changed circumstances or other justification exists. Yet although the circumstances may have changed, the parties and any children they have are the same as in the original dissolution. Prior court orders, both before and after the

judgment of dissolution, have shaped the parties' relations and obligations, so that the disposition of the most recent postdissolution petition may rest on a court order entered years before. Postdissolution petitions are filed under the case number of the original dissolution, in a comprehensive case file that permits the court to see the entire record of what has gone before. Even before Kozloff, the Third District explicitly repudiated the McPike rule as a poor fit with these facts:

> "[The rule] flies in the face of reality. A post-decree petition for modification of child custody involves a redocketing of the original divorce proceeding. It carries the same case title and the original file number. The clerks of court use the same court file jacket. New and additional pleadings are simply filed seriatim following the older pleadings. The parties are identical. The children are the same. *** The petition for modification is a petition to modify a prior order. It is not a petition *** springing up spontaneously." In re Custody of Santos, 97 Ill. App. 3d 629, 630 (1981).

Indeed, Santos went so far as to call it "dishonest" to describe postdecree divorce matters as new proceedings. "They aren't. They are simply an extension of the same proceedings." Santos, 97 Ill. App. 3d at 631. Kozloff rests on a similar view of postdissolution proceedings as direct outgrowths of the earlier proceedings in the case. It is the interrelated nature of postdissolution proceedings comprising one unitary action that gives rise to the prohibition against additional substitutions of judge, not the other way around.

Purdy, issued a few years later, does not mention Kozloff, and it might be argued that the Purdy court's description of the father's postdissolution petition as a new "cause of action" (Purdy, 112 Ill. 2d at 5) suggests that the court viewed postdissolution petitions as new actions rather than new claims. We believe that this argument misreads Purdy. In Purdy, the issue confronting the

supreme court was whether the appellate court properly dismissed the appeal on the ground that, under Leopando, the trial court's order was not a "final judgment" permitting an appeal under Rule 304(a). Purdy, 112 Ill. 2d at 3-4. Thus, the issue of finality--whether under Leopando an order other than a judgment of dissolution could ever be final and therefore appealable--is at the center of Purdy. The supreme court held that Leopando was inapplicable to postdissolution proceedings:

> "[T]he marriage of the parties has been dissolved since March 1980, and Leopando therefore does not govern. The issue of custody arises here not as a matter ancillary to the issue of dissolution or any other issue, but rather as a result of the father's post-dissolution petition for a change of custody. *** An order for a change of custody in this context constitutes a final, and therefore appealable, order." Purdy, 112 Ill. 2d at 5.

Thus, Purdy established the proposition that postdissolution petitions are neither (1) part of the single claim encompassing the predissolution proceedings under Leopando, nor (2) so intertwined with all other postdissolution matters that they necessarily must be viewed as raising a single postdissolution claim, no part of which could be appealed if some other part remained to be resolved. The core holding of Purdy is that postdissolution matters are to be considered separately, so that if a final order has been entered on a postdissolution petition, where the trial court has entered a Rule 304(a) finding a party may appeal that order even while another postdissolution matter is still pending before the trial court.

Despite Purdy's description of the postdissolution custody petition as a "cause of action" and the similarity between that phrase and "action," we do not believe that this word choice reflects a view of postdissolution petitions as new actions. Purdy's first reference to "cause of action" is in a quote from Leopando:

"'A petition for dissolution advances a single claim; that is, a request for an order dissolving the parties' marriage. The numerous other issues involved, such as custody, property disposition, and support are merely questions which are ancillary to the cause of action. [Citation.] They do not represent separate, unrelated claims; rather, they are separate issues relating to the same claim.'" (Original emphasis removed; current emphasis added.) Purdy, 112 Ill. 2d at 4-5, quoting Leopando, 96 Ill. 2d at 119.

In this passage, the supreme court in Leopando is using "cause of action" as a rough equivalent to "claim": the issues of custody, property distribution, etc., are "questions" (or "issues") relating to the "cause of action" (or "claim"). This usage comports with the primary definition of "cause of action" as a synonym for "claim." See Black's Law Dictionary at 214, 240 (7th ed. 1999) (first definition of "cause of action" is "[a] group of operative facts giving rise to one or more bases for suing; *** claim"; first definition of "claim" is "[t]he aggregate of operative facts giving rise to a right enforceable by a court").

The supreme court in Purdy then uses the phrase "cause of action" in its own discussion:

"Unlike the situation in Leopando in which the cause of action was a petition for dissolution of marriage and only the issue of custody had been decided, here the cause of action is a petition for a change of custody and all related claims have been decided except for the extent of the mother's summer visitation, a matter that is always subject to revision." (Emphasis in original.) Purdy, 112 Ill. 2d at 5.

We believe that this passage addresses the issue of when an order may be considered "final" and thus eligible for a finding of appealability under Rule 304(a). Under Leopando, the "cause of action" stated in a dissolution petition raises only a single dissolution claim, of which custody is

merely one aspect. A determination of custody thus is not final as to the only claim under that "cause of action," and so it is not immediately appealable even with a Rule 304(a) finding. See Leopando, 96 Ill. 2d at 118, cited in Purdy, 112 Ill. 2d at 4. By contrast, the "cause of action" stated in a postdissolution petition to change custody gives rise to an independent claim for custody that is separate from both the predissolution claim and claims that may be raised in any other postdissolution petitions. Because a postdissolution petition raises a separate issue that is not "ancillary to the issue of dissolution or any other issue," the trial court's determination of that issue is final and thus eligible for a finding under Rule 304(a). Purdy, 112 Ill. 2d at 5.

In Purdy, the trial court had entered a Rule 304(a) finding on the order the mother sought to appeal. The supreme court therefore had no occasion to decide--and did not address--the issue that is our focus here: whether a final judgment on one postdissolution claim is appealable without a Rule 304(a) finding, when another postdissolution claim is still unresolved. Purdy does not refer in any way to Kozloff's holding that postdissolution proceedings are not new actions. Nevertheless, we believe that Leopando, Kozloff, and Purdy harmonize with each other and demonstrate a common understanding. Leopando, issued in 1983, was the first of the three. It enunciated the supreme court's view that, prior to the entry of a judgment of dissolution, the issues involved in a divorce action are so interrelated that they constitute one claim and thus the resolution of fewer than all issues cannot be a final order. Leopando, 96 Ill. 2d at 119. Kozloff was issued one year later and held that postdissolution proceedings are sufficiently related to the original dissolution action that they should be viewed as a continuation of that action, not as new actions. Kozloff, 101 Ill. 2d at 531. Finally, in 1987 Purdy clarified that Leopando's "all-one-claim" approach does not govern postdissolution petitions, so that an order resolving the matters raised in such a petition is a final

order and may be appealed pursuant to Rule 304(a). Purdy, 112 Ill. 2d at 5. When read together, these cases support the conclusion that a postdissolution petition does not commence a new action but instead raises a new claim in the dissolution action, and that a Rule 304(a) finding is therefore necessary to appeal a ruling on one such claim when another remains pending.

Although this court has not directly addressed this issue before today, in our previous cases we have always implicitly treated postdissolution petitions as raising new claims in the dissolution action, regardless of whether the claims were raised in one petition or several. When one postdissolution petition raises multiple claims, we have held that a Rule 304(a) finding is required for the appeal of a final judgment on fewer than all the claims raised by that petition. See In re Marriage of Alyassir, 335 Ill. App. 3d 998, 1000 (2003); In re Marriage of Ruchala, 208 Ill. App. 3d 971, 975-76 (1991); In re Marriage of Merrick, 183 Ill. App. 3d 843, 845 (1989). Of course, we would reach the same result even if the single petition were treated as initiating its own action involving its own multiple claims. But we have also consistently applied Rule 304(a) when the parties have filed multiple postdissolution petitions, treating the separate petitions as all raising claims in a single action. Darrell argues that the fact that his visitation request was filed in a separate petition from Tamara's support petition means that they are two distinct actions and thus Rule 304(a) does not apply. However, our own precedent, detailed below, contradicts this argument.

In In re Marriage of Piccione, 158 Ill. App. 3d 955 (1987), the mother filed a postdissolution petition to increase child support and for attorney fees. The trial court increased child support and granted the mother leave to file a petition for fees. The mother did so, but she appealed the support judgment while the fee petition was pending. We dismissed that appeal, as the trial court had entered no Rule 304(a) finding. Piccione, 158 Ill. App. 3d at 963-64.

In In re Marriage of Sassano, 337 Ill. App. 3d 186 (2003), the father filed a petition to modify child support. The trial court denied the petition. The mother then filed a petition for fees and costs. The trial court attached a Rule 304(a) finding to the support judgment, and the father appealed while the fee petition was pending. Distinguishing Piccione, we determined that the Rule 304(a) finding vested our jurisdiction. Sassano, 337 Ill. App. 3d at 192.[2]

In In re Marriage of Colangelo, 355 Ill. App. 3d 383 (2005), the mother filed a petition to increase child support and a petition for a rule to show cause. The trial court entered judgment on the latter but did not resolve the former, and the mother appealed. The father argued that we lacked jurisdiction of the judgment on the petition for a rule to show cause, as the mother was required to appeal that judgment without waiting for the judgment on the petition to increase child support. We disagreed, holding that the absence of a Rule 304(a) finding precluded an immediate appeal of the judgment on the petition for a rule to show cause. Colangelo, 355 Ill. App. 3d at 388-89.[3] Thus, the

_____

[2]In Sassano, we incorrectly referred to the father's postdissolution petition as a "new proceeding." Sassano, 337 Ill. App. 3d at 192, citing In re Marriage of Semonchik, 315 Ill. App. 3d 395, 401 (2000) (one of several cases that incorrectly continued to rely on McPike and its appellate court progeny, despite the supreme court's rejection of McPike in Kozloff). We also made the error of referring to a Rule 304(a) finding as a "finding of finality." Sassano, 337 Ill. App. 3d at 192. A Rule 304(a) finding does not make final a judgment that is not final; it only makes enforceable or appealable a judgment that is final as to fewer than all parties or claims. 210 Ill. 2d R. 304(a).

[3]Although Colangelo was correct in generally treating multiple postdissolution petitions as raising multiple claims in the dissolution action, we have since held that, because of its nature, a civil contempt petition such as a postdissolution petition for a rule to show cause does not raise a "claim

Illinois Appellate Court's Second District has consistently treated postdissolution petitions as raising new claims within one action rather than as commencing new actions.

The special concurrence characterizes Alyassir as holding that postdissolution petitions present claims within a new postdissolution action, and suggests that our decision today departs from Alyassir's approach. There is simply no basis for this assertion. Alyassir held that two postdissolution claims were claims within one action, with the result that the judgment on one could not be appealed while the other was still pending absent a Rule 304(a) finding. Alyassir never took the position that the claims at issue there were brought in a new postdissolution action separate from the initial dissolution action. To the contrary, the postdissolution proceedings in Alyassir were, like all postdissolution proceedings, a direct outgrowth from the original dissolution action. Our decision here follows Alyassir and our other past decisions and is in harmony, not at odds, with those decisions.

The opposite approach was taken by the First District in In re Marriage of Carr, 323 Ill. App. 3d 481 (2001). There, the father filed a postdissolution petition to modify child support. The trial court granted the petition. The mother then filed a petition for attorney fees. The trial court entered judgment on that petition, and the mother appealed the judgment on the father's petition. The First District dismissed the appeal, holding that the mother should have immediately appealed the judgment on the father's petition without waiting for the judgment on hers, despite the absence of a Rule 304(a) finding. The court did not discuss its reasoning beyond finding that the two petitions were "separate and unrelated," and much of the court's opinion appears to focus on the issue of

for relief" within the meaning of Rule 304(a). See In re Marriage of Gutman, No. 2--06--0213 (October 16, 2007).

-24-

whether a petition for attorney fees incurred postdissolution should be considered "central" to the trial court's determination on other issues. See Carr, 323 Ill. App. 3d at 484-85. By declining to apply Rule 304(a), however, the court implicitly treated each petition as beginning a new action, such that the final judgment on one was appealable while the other was pending.

It is unclear whether the First District still follows Carr. In Shermach v. Brunory, 333 Ill. App. 3d 313 (2002), a First District parentage case involving a petition to modify custody, the court held that the child support determination still pending before the trial court prevented the appeal of the custody order absent a Rule 304(a) finding. See Shermach, 333 Ill. App. 3d at 320 (discussing a variety of relevant cases, including Leopando and Purdy, but citing Carr only for the general proposition that a reviewing court has the obligation to sua sponte consider its jurisdiction even if the issue is not timely raised by the parties). In In re Marriage of Ehgartner-Shachter, 366 Ill. App. 3d 278 (2006), a First District panel noted the different approaches of Carr and the Second District but did not choose between them, ultimately finding that there was no appellate jurisdiction under either approach. Finally, a very recent First District decision addressing appellate jurisdiction in postdissolution cases, In re Marriage of Carillo, 372 Ill. App. 3d 803, 813 (2007), relied primarily on Second District cases including Colangelo and made no reference to Carr. See also Santos, 97 Ill. App. 3d at 630-31 (a Third District substitution-of-judge case rejecting, even before Kozloff, the McPike rule that a postdissolution petition commences a new action); In re Marriage of Gaudio, 368 Ill. App. 3d 153 (2006) (a Fourth District appellate jurisdiction case discussing the split between Carr and the Second District's approach and adopting the latter). Given the consistent approach of this court in the past and the conflicting guidance offered by other districts of the appellate court, we

adhere to our position, supported by Kozloff and Purdy, that postdissolution petitions raise claims in the dissolution action.

Applying this principle to the case before us, Tamara's petition to modify child support and Darrell's visitation petition raised claims for relief in the same action, and the trial court's resolution of the first but not the second was thus a final order as to fewer than all of the claims pending in the action. Darrell did not file his petition until after the trial court entered its order granting Tamara's petition. Darrell moved to vacate the court's grant of Tamara's petition, however, thus rendering that order unappealable. See 210 Ill. 2d R. 303(a) (trial court retains jurisdiction to set aside any final order or judgment upon the filing of a timely postjudgment motion; notice of appeal filed before such a motion is resolved has no effect); Marsh v. Evangelical Covenant Church of Hinsdale, 138 Ill. 2d 458, 468 (1990) ("the underlying claim remains under the jurisdiction of the trial court while a timely post-trial motion is pending"). In the meantime, he filed his own visitation petition, which was still pending when the trial court entered its order denying his motion to vacate. That order constituted the final order resolving Tamara's petition, and Darrell's claim was still pending when that order was entered. Fortunately for Darrell, the recent amendment to Rule 303(a) enables us to treat his premature notice of appeal as if it were filed on May 23, 2006, the date that the trial court resolved the other pending claim.

The special concurrence fears that our view of postdissolution petitions as stating claims within the original dissolution action will cause havoc under John G. Phillips & Associates v. Brown, 197 Ill. 2d 337 (2001). We view these fears as unwarranted. John G. Phillips involved a postjudgment motion for sanctions pursuant to Rule 137. The supreme court held that such a motion states a claim within the original action and thus, when such a motion is timely filed (within 30 days

after the judgment), a claim remains pending and a litigant may not appeal the original judgment absent a Rule 304(a) finding. John G. Phillips, 197 Ill. 2d at 341-42. This is true even when a notice of appeal has already been filed; under the old version of Rule 303(a), such an appeal would be considered premature and subject to dismissal. (Under the amended Rule 303(a), of course, the notice of appeal would simply remain ineffective until the trial court entered judgment on the last of the pending claims.) The special concurrence suggests that applying the principles of John G. Phillips to our holding here could cause final judgments for dissolution to become unappealable years after they have actually been appealed and might even result in the nullifying of appeals long since completed. These fears are groundless, however. We note initially that the supreme court has never suggested that John G. Phillips applies to postdissolution cases. Motions for sanctions pursuant to Rule 137 must be brought within 30 days, the same time in which an appeal must be filed. Accordingly, a motion for sanctions cannot render unappealable any judgment other than one entered in the last 30 days, and cannot indefinitely prevent the parties' ability to appeal. Dissolution cases, by contrast, may involve multiple postjudgment claims filed years after the judgment of dissolution, producing multiple judgments on those postdissolution claims. This factual context alone distinguishes John G. Phillips. Moreover, in John G. Phillips, the supreme court merely held that the filing of a Rule 137 motion for sanctions rendered the most recent judgment unappealable without a Rule 304(a) finding. The court never suggested that an earlier final judgment, which was timely appealed within 30 days without any other claim being filed during that period, could be nullified by a claim filed more than 30 days later. To suggest that John G. Phillips makes that outcome possible is to stretch that case beyond its limits, and we reject such a reading.

Accordingly, we turn to the merits of the appeal. Darrell argues that the trial court erred in refusing to amend the September 6, 2005, child support order to state the support due as a dollar amount rather than (or in addition to) a percentage. This argument is correct, as section 505(a)(5) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505(a)(5) (West 2004)) expressly requires that "[t]he final order in all cases shall state the support level in dollar amounts," although a court may insert a percentage in addition to the dollar amount if it finds that the correct child support cannot be stated exclusively as a dollar amount because the payor's income is "uncertain as to source, time of payment, or amount." Although the trial court conceded in its ruling that a dollar amount should be stated, it refused to vacate or amend its September 6, 2005, order because the parties had proffered that order as an agreed order. The trial court apparently was concerned that permitting Darrell to vacate the order as improper in form would prevent Tamara from obtaining the proper amount of support, due to the variations in Darrell's weekly net income.

The trial court erred in refusing to amend or vacate the order on the basis that it was an agreed order. See In re Marriage of Hightower, 358 Ill. App. 3d 165, 170-71 (2005) (although the parties' agreement may bind the court on the issues of property distribution and maintenance, it cannot bind the court on the issues of child custody, support, and visitation, and the court must independently determine these issues). Moreover, there was no basis for the concern that a recalculation of Darrell's support obligation as a dollar amount would disadvantage Tamara and their children, because of variations in Darrell's income or because the initial order would have to be vacated. An appropriate dollar amount can be calculated by using the income averaging method. See In re Marriage of DiFatta, 306 Ill. App. 3d 656, 662 (1999). Tamara is entitled to a calculation of appropriate child support dating from the filing of her petition to increase child support, regardless

of when the trial court enters an order correctly determining that support. 750 ILCS 5/510(a) (West 2004). Accordingly, the trial court erred in refusing to amend or vacate the September 6, 2005, order. We reverse its denial of Darrell's motion to vacate, and remand so that it may enter an appropriate order for child support dating from Tamara's petition to increase child support.

Finally, Darrell has moved to strike the appendix to Tamara's response brief and those portions of the brief that refer to the appendix, which consists of material outside the record on appeal. The inclusion of this material from outside the record was improper. In re Parentage of Melton, 321 Ill. App. 3d 823, 826 (2001). We therefore grant the motion to strike.

The judgment of the circuit court of Carroll County is reversed, and the cause is remanded.

Reversed and remanded.

BOWMAN, J., concurs.

JUSTICE O'MALLEY, specially concurring:

I agree with the majority's holding on the merits of this appeal.

I write separately because I disagree with the majority's discussion of the nature of postdissolution petitions as well as its conclusion that the recent amendment to Rule 303(a) applies retroactively to this appeal. I begin with the former point.

The majority decision adequately lays out the facts of the relevant cases, and I need not recapitulate those facts here. It suffices to say that Carr treats successive postdissolution petitions (the husband's petition to change child support and the wife's petition for contribution to attorney fees) as separate actions, each appealable after a final order without Rule 304(a) language, while Alyassir criticizes this rule on the ground that the two petitions in Carr constituted claims in a single action and thus could not be appealed separately without Rule 304(a) language (see Alyassir, 335

Ill. App. 3d at 1000). Thus, "[t]here is an apparent conflict *** as to whether Rule 304(a) certification is required to separately appeal an order disposing of postdecree matters, where at the time of such order's entry other postdecree matters remain pending." In re Marriage of Ehgartner-Shachter, 366 Ill. App. 3d 278, 284 (2006). (In light of the amendment to Rule 303, the conflict is now more aptly characterized as whether Rule 304(a) certification is required to immediately separately appeal such an order.)

If Alyassir had not criticized Carr as described above, I might have reconciled the two cases on the basis that, in Alyassir, the wife filed a two-count postdissolution petition and appealed after only one count had been decided (and without Rule 304(a) language), while, in Carr, the husband filed a petition to change child support almost a year before the wife filed a petition for contribution to attorney fees and the wife appealed after the trial court had ruled on the first but not the second petition. Accordingly, Alyassir presented two claims in one postdissolution action (which require Rule 304(a) language for their judgments to be separately appealable), while Carr presented two actions (which do not require Rule 304(a) language for their judgments to be separately appealable). I would also reconcile Colangelo, in which the wife concurrently filed two petitions, on the ground that it implicitly treated the two petitions as the functional equivalent of a two-count petition and therefore as two claims in a single action. However, Alyassir's criticism of Carr forecloses this possibility. Further, my view does nothing to reconcile Carr with Piccione (see slip op. at 22) or with subsequent cases that follow Alyassir's criticism to hold that judgments on separately filed petitions cannot be appealed without Rule 304(a) language (see In re Marriage of Gaudio, 368 Ill. App. 3d 153, 156-58 (2006)).

There is a split in the appellate court as to how to treat postdissolution petitions. Some cases (e.g., Alyassir) consider separately filed postdissolution petitions to be claims within a single postdissolution action, while others (e.g., Carr) consider each postdissolution petition to initiate a separate postdissolution action. There are policy considerations, hinging primarily on whether the trial court or the litigants should control the appealability of judgments on postdissolution petitions, to support either view.[4] I would resolve this conflict by following the Carr view and overruling Gaudio as well as Alyassir's criticism of Carr.

My primary reason for this approach is that the Alyassir rule must view the first-filed pending postdissolution petition as starting a new action and any petitions filed before the first is resolved as claims within the new postdissolution action. The only legal basis I can discern for this view is that the Alyassir rule logically assumes that a trial court implicitly combines into one action any postdissolution petitions filed before the trial court issues a final order on all pending petitions. (Subsequent postdissolution petitions would initiate yet another action.) In my view the Carr rule relies less on implication than on the trial court's actual intent in entering an order, and it sufficiently

---

[4]The Alyassir rule would require a party to seek Rule 304(a) language in most situations if the party wishes to immediately appeal the judgment on a particular postdissolution claim while other claims are still pending, but it would prevent piecemeal appeals in a situation where parties bring a flurry of postdissolution petitions. The Carr rule would largely allow the litigants to determine appealability, as the judgment on every petition they file would be separately appealable. However, I note that, under the Carr rule, a trial court may explicitly combine two petitions in order to avoid piecemeal appeals (or, as is often the case, the trial court may resolve related petitions in a single order).

controls piecemeal appeals. While I would follow Carr, though, I recognize that the Alyassir approach has considerable merit and, as a practical matter, may be more workable. In short, both views are reasonable, but I would follow Carr because, even if it is weaker as a matter of policy, it seems to rest on stronger legal ground.

The majority follows neither tack. Instead, based on its reading of Kozloff, it invents a third option, under which each postdissolution petition raises a claim in the original dissolution action. I disagree with the majority's approach because it misapplies precedent and is unworkable.

The majority reads Kozloff as decreeing broadly that postdissolution petitions raise new claims in the original dissolution action, even for jurisdictional purposes. I would read Kozloff much more narrowly. As the majority notes, Kozloff did not address any jurisdictional issues, but, rather, it arose in the context of a trial court's denial of a motion for change of venue. The husband argued that he should have been allowed a change of venue as of right on his postdissolution petition, since the judge, who had presided over previous petitions, had yet to make a substantive ruling on the pending petition. Kozloff, 101 Ill. 2d at 529-30. "[T]he appellate court ruled that each post-decree petition constituted a new proceeding for venue purposes" (emphasis added) and thus that the husband should have been allowed a change of venue as of right. Kozloff, 101 Ill. 2d at 529-30. The supreme court held that it "[could not] accept the appellate court position, because *** it would lead to a serious abuse of the venue act." Kozloff, 101 Ill. 2d at 530. The supreme court went on to describe the possible abuses of the venue act that the appellate court rule would allow and then stated that, "[a]ccordingly, *** post-decree petitions do not constitute new actions, but merely continuations of the dissolution proceeding, and a substantive ruling on one petition will preclude a change of venue as of right on another." Kozloff, 101 Ill. 2d at 531.

In the context of the entire discussion in <u>Kozloff</u>, I read the statement that "post-decree petitions do not constitute new actions, but merely continuations of the dissolution proceedings" to apply only in the change of venue context, and I do not read it as broadly extending to jurisdictional issues.

The majority notes that, while <u>Kozloff</u> arose in the posture of an appeal of a ruling on a motion to substitute judge, there is nothing in the decision to limit it only to substitutions of judges. In the absence of such limitation, the majority claims that it will not read any limitation into the decision. Slip op. at 17. Curiously, the majority ignores this self-imposed stricture in considering the supreme court's later decision in <u>Purdy</u>, 112 Ill. 2d 1.

To the extent the supreme court's holding in <u>Kozloff</u> did in fact indicate that a postdissolution petition raises a claim in the original proceeding, I believe its later decision in <u>Purdy</u> effectively overruled that holding. The court in <u>Purdy</u> reasoned:

"The issue of custody arises [in <u>Purdy</u>] not as a matter ancillary to the issue of dissolution or any other issue, but rather as a result of the father's post-dissolution petition for a change of custody. ***

Unlike the situation in <u>Leopando</u> in which the cause of action was a petition for dissolution of marriage and only the issue of custody had been decided[5], here the cause of action is a petition for a change of custody and <u>all</u> related claims have been decided except for the extent of the mother's summer visitation, a matter that is always subject to revision.

---

[5]I note that <u>Purdy</u>'s description of <u>Leopando</u> is inaccurate. In addition to the custody issue, <u>Leopando</u> also considered and granted dissolution of the marriage. This inaccuracy, however, is not material to the analysis.

Thus, the kind of piecemeal litigation that the decision in <u>Leopando</u> was intended to prevent cannot occur in this context." (Emphasis in original.) <u>Purdy</u>, 112 Ill. 2d at 5.

The majority relies on the statement from <u>Kozloff</u> that "post-decree petitions do not constitute new actions, but merely continuations of the dissolution proceeding." However, <u>Purdy</u>'s statement that, in <u>Purdy</u>, "the cause of action [was] a petition for a change in custody," directly contradicts the statement from <u>Kozloff</u>. The majority dismisses this contradiction by parsing <u>Purdy</u>'s use of the phrase "cause of action" to mean "claim." Slip op. at 20. However, in the Black's Law Dictionary entry the majority references, I find several definitions for the phrase "cause of action," including "[l]oosely, a lawsuit." Black's Law Dictionary 214 (7th ed. 1999). I further note that the word "cause" can be meant to refer to "[a]n action or suit." Ballentine's Law Dictionary 182 (3rd ed. 1969). The majority's interpretation of <u>Purdy</u> is hardly ironclad. The majority also delves deep into the context in which <u>Purdy</u> made its reference to "cause of action" (see slip op. at 20-22), but, unfortunately, it fails to take the same cautious approach when it interprets <u>Kozloff</u>.

Purdy stated that "[t]he issue of custody [arose] [in <u>Purdy</u>] not as a matter ancillary to the issue of dissolution or any other issue, but rather as a result of the father's post-dissolution petition for a change of custody." <u>Purdy</u>, 112 Ill. 2d at 5. To me, this language means that a postdissolution petition does not raise a claim ancillary to a dissolution claim or action, but rather a separate action. Thus, I disagree with the majority when it says that <u>Purdy</u> is consistent with <u>Kozloff</u>. Reading the relevant statements from <u>Kozloff</u> and <u>Purdy</u> in their full contexts, I infer that the supreme court did not intend the statement in <u>Kozloff</u> to apply to jurisdictional issues but did intend the statement in <u>Purdy</u> to apply to such issues.

The majority dismisses Purdy on the basis that Purdy's "core holding" is irrelevant here. Slip op. at 19. I cannot disagree: to me, Purdy's only relevance to this case is that it demonstrates the majority's error in invoking Kozloff. (Purdy may instruct us as to whether an initial postdissolution petition is a new action, but it does not instruct us on whether a second one is.) However, as I note above, the "core holding" in Kozloff is also irrelevant here.

The majority also emphasizes that "Purdy does not refer in any way to Kozloff's holding." Slip op. at 21. I do not see the fact that Purdy did not mention Kozloff as forestalling the possibility that Purdy overruled Kozloff, and I doubt the majority does either, since the majority reasons that "[t]he McPike rule was squarely rejected by the supreme court in [Kozloff]" (slip op. at 16) even though Kozloff makes no mention of McPike. In any event, to me, the only significance of the fact that Purdy did not cite Kozloff is that it indicates that the supreme court agreed with me that Kozloff is irrelevant to the jurisdictional issues presented here.

Our differing readings of precedent aside, practical considerations also fuel my disagreement with the majority position. Under John G. Phillips & Associates v. Brown, 197 Ill. 2d 337 (2001), a Rule 137 petition (which, incidentally, must be filed within 30 days of the final judgment on the original claim) raises a claim in the original action and, as a result, the judgment on the original claim could not be appealed, absent a Rule 304(a) finding, until the Rule 137 petition were resolved. This was true even if a timely Rule 137 petition were filed after the notice of appeal; under Phillips, the notice of appeal in that case would be invalidated by the later Rule 137 petition.[6]

_____

[6]The majority argues that our supreme court "has never suggested that [Phillips] applies to postdissolution cases." Slip op. at 27. Nor has our supreme court suggested the opposite. Phillips obviously applies the proposition that "appeals may ordinarily only be taken from final orders which

Since the decision in Phillips, our supreme court has amended Rule 303(a)(2) to modify the Phillips holding. See Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a)(2), eff. May 1, 2007. Under the new rule, "a notice of appeal filed *** before the final disposition of any separate claim[] becomes effective when the order disposing of said motion or claim is entered." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a)(2), eff. May 1, 2007. Though the new Rule 303 relieves litigants of a potential jurisdictional trap, it does not overrule the portion of Phillips that says a claim that is part of the original action must be decided before an appeal can take place, even if the claim is filed after the notice of appeal.

The majority proposes that postdissolution petitions raise claims in the original dissolution action. Under the rule from Phillips, the problems with this approach are plain. Since there is no time limit for filing a postdissolution petition, if such a petition adds a claim to the original action, then, under amended Rule 303(a)(2), any already-filed notice of appeal for the judgment on the previous dissolution claim becomes ineffective (absent Rule 304(a) language) until the new postdissolution claim is resolved. What happens when a postdissolution petition is filed after an appeal of the judgment on the original dissolution claim has been resolved? Does the already-decided appeal become void because the notice of appeal does not become effective until the postdissolution petition is resolved? Or, for cases to which the amended version of Rule 303(a)(2) does not apply, does the postdissolution petition, which adds a claim and therefore vitiates a previous notice of appeal, render void the already-decided appeal? Further, regardless of whether there has been an appeal as of the time a postdissolution petition is filed, does the fact that the petition adds

---

dispose of every 'claim' " to a situation in which a claim is raised after an otherwise final judgment. Phillips, 197 Ill. 2d at 339. This proposition is global.

a claim to the original dissolution proceeding allow the parties to appeal anew all of the issues in the original dissolution judgment along with their appeal of the postdissolution judgment?

The majority attempts to distinguish Phillips, but the majority's response actually further demonstrates my point. As the majority notes, "a motion for sanctions cannot render unappealable any judgment other than one entered in the last 30 days, and cannot indefinitely prevent the parties' ability to appeal." Slip op. at 27. The reason a motion for sanctions may vitiate only notices of appeal filed within a certain time period is that, under the Supreme Court Rules, such a motion must be filed within 30 days of the entry of the otherwise final judgment. 155 Ill. 2d R. 137. There is no such restriction on the filing of postdissolution petitions. Thus, as the majority notes, "[d]issolution cases, by contrast, may involve multiple postjudgment claims filed years after the judgment of dissolution." Slip op. at 27. While it is true, as the majority states, that the supreme court in Phillips "never suggested that" an appeal of "an earlier final judgment *** could be nullified by a claim filed more than 30 days later" (slip op. at 27), the only reason the supreme court did not so hold is that Rule 137 limits the time in which a motion for sanctions may be filed. There is no such limitation on postdissolution petitions.

The majority cites its own practical considerations--"the realities of postdissolution proceedings"--in support of its rule. Slip op. at 17. The majority observes that "disposition of the most recent postdissolution petition may rest on a court order entered years before" and that "[p]ostdissolution petitions are filed under the case number of the original dissolution, in a comprehensive case file that permits the court to see the entire record of what has gone before." Slip op. at 18. I do not see what effect these "realities" should have on the rules of appellate jurisdiction, but I note that they do not seem to cause much problem in the area of postconviction petitions (see

725 ILCS 5/122--1 <u>et seq.</u> (West 2006)), even though such petitions share all the above-mentioned "realities" with postdissolution petitions.

Another interesting aspect of the majority's holding is its <u>sub silentio</u> repudiation of <u>Purdy</u>. If, as the majority asserts, a postdecree petition is actually a continuation of the original dissolution proceeding, then there never is a postdecree petition (or if there is, upon its filing, it is magically transmuted into a claim in the original dissolution proceeding). <u>Leopando</u> would always control in such a situation and <u>Purdy</u>, which limited <u>Leopando</u> to the original dissolution proceeding, would become wholly superfluous.

In my view, the majority's holding is based on an unwarranted extension of <u>Kozloff</u> into an inapposite area of the law. It will result in intermittent appealability for dissolution proceedings interspersed with periods in which all that has gone before must necessarily be voided. The only way trial courts and litigants may avoid this result is by entering Rule 304(a) language with every order intended to dispose of a case, but even that remedy will give no recourse to litigants in all the divorce proceedings that have taken place before the majority opinion today.

Though I agree with the ultimate resolution of this appeal, I cannot concur in the portion of the majority opinion that holds that a postdissolution petition raises a new claim in the original dissolution action. I believe we must follow either <u>Carr</u> or <u>Alyassir</u>.

Notwithstanding the above discussion, if I were to agree with the majority's conclusions regarding <u>Kozloff</u>, I would disagree with the majority's holding that the recent amendment to Rule 303 should apply to this appeal.[7] However, though I disagree with the majority on this issue, my

---

[7]I refer below to the idea that the parties obtained a vested right in the trial court's judgment, but I do so based only on the rhetorical assumption that my view of <u>Kozloff</u> is incorrect. In reality,

position is not based on the reasoning in Barter, 235 Ill. App. 3d 18 (1992); I agree with the majority's criticism of Barter's reliance on an erroneous analogy to statutes of limitation. I also agree with the majority's discussion of the framework for analyzing whether an amendment is retroactive. See slip op. at 3-5, citing Allegis, 223 Ill. 2d 318, Commonwealth Edison Co., 196 Ill. 2d 27, 5 ILCS 70/4 (West 2006), and 134 Ill. 2d R. 2. In short, as the majority notes, procedural amendments will apply retroactively and substantive ones will not, except that no amendment may apply retroactively where doing so would violate a constitutional protection. I further agree with the majority that the amendment to Rule 303 is procedural. However, unlike the majority, I believe applying the Rule 303 amendment retroactively in this case would violate a constitutional protection: respondent's "vested right," or " 'settled expectation honestly arrived at with respect to substantial interests' " (Commonwealth Edison, 196 Ill. 2d at 48, quoting Moore v. Jackson Park Hospital, 95 Ill. 2d 223, 242 (1983) (Ryan, C.J, specially concurring, joined by Underwood and Moran, JJ.))[8] with regard to the trial court's final judgment.

In my view (again, assuming arguendo that the majority's holding regarding the appealability of judgments on postdissolution petitions is correct), the parties had a vested right in the trial court's final judgment when the time lapsed for appealing that judgment. Because the parties had a vested

_____

I believe that the parties did not obtain a vested right in this judgment, because petitioner's notice of appeal was effective, and the retroactivity of the amendment to Rule 303 is not before us in this appeal. I reach this retroactivity issue only in response to the majority discussion.

[8]Given our supreme court's criticism of the term "vested right," I use the phrase with regret. See Commonwealth Edison, 196 Ill. 2d at 47-48.

right in the final judgment, the amendment to Rule 303 cannot operate retroactively to bestow us with jurisdiction to interfere with that right.

Though my research uncovers little Illinois case law on this point, I find guidance from other sources. It has been stated that, "once private rights are fixed by judgment, they are a form of property over which the legislature has no greater power than it has over any other form of property" and "[t]he legislature may not, under the guise of an act affecting remedies, destroy, or impair final judgments obtained before the passage of the act." 46 Am. Jur. 2d Judgments §12 (2006). "Under Illinois law, a judgment becomes a vested right of property once it is no longer subject to review or modification." Evans v. City of Chicago, 689 F.2d 1286, 1296 (7th Cir. 1982), overruled on other grounds, 873 F.2d 1007 (7th Cir. 1989). In County of Suffolk v. Long Island Lighting Co., 14 F. Supp. 2d 260, 265 (E.D.N.Y. 1998), it was observed:

"It is a long-established principle of American law that a final money judgment gives rise to a 'vested right' which entitles the judgement creditor to the same constitutional protections afforded other forms of property. See, e.g., Hodges v. Snyder, 261 U.S. 600, 603, 43 S. Ct. 435, 67 L. Ed. 819 (1923) ('the private rights of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation, but must be thereafter enforced by the court regardless of such legislation'); McCullough v. Virginia, 172 U.S. 102, 123-24, 19 S. Ct. 134, 43 L. Ed. 382 (1898); Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U.S. (18 How.) 421, 431, 15 L. Ed. 435 (1852) ('[I]f the remedy in this case had been an action at law, and a judgment rendered in favor of the plaintiff for damages, the right to these would have passed beyond the reach of the power of congress.'); Benjamin v. Jacobson, 124 F.3d 162, 176 (2d Cir. 1997) ('It is well-settled that a final money judgment

creates a "vested right" and hence a constitutionally protected property interest.'); <u>Georgia</u>

<u>Ass'n of Retarded Citizens v. McDaniel</u>, 855 F.2d 805, 810 (11th Cir. 1988) ('rights fixed by

judgment are, in essence, a form of property over which legislatures have no greater power

than any other [property]'), <u>cert. denied</u>, 490 U.S. 1090, 109 S. Ct. 2431, 104 L. Ed. 2d 988

(1989); see also <u>Plaut v. Spendthrift Farm, Inc.</u>, 514 U.S. 211, 115 S. Ct. 1447, 131 L. Ed.

2d 328 (congressional act which sought to retroactively modify a final judicial order is

unconstitutional on separation of powers grounds)."

Based on the above authority, I would hold that, once the trial court's judgment was no longer

subject to review or modification, the parties obtained a vested right in the judgment.  Here, the trial

court issued a final order as to all pending claims on May 23, 2006, when it resolved petitioner's

petition to set specific times for visitation, which was pending at the time this appeal was filed.  A

notice of appeal "must be filed *** within 30 days after the entry of the final judgment appealed

from."  Official Reports Advance Sheets No. 8 (April 11, 2007), R. 303(a)(1), eff. May 1, 2007.

After 30 days passed from the date of the May 23, 2006, judgment without any appeal, the trial

court's judgment was no longer subject to review or modification, and the parties gained a vested

right in that judgment.  If the amendment to Rule 303(a) had come before the end of this 30-day

period, and thus before the parties obtained a vested right in the judgment, then the amendment

would apply retroactively to grant us jurisdiction.  The relevant amendment to Rule 303(a) was not

effective until May 1, 2007, long after the parties' right in the judgment "vested."

The majority holds that there is no vested right to the trial court's judgment here because there

was an appeal pending at the time any right to the trial court's judgment would have "vested."  See

slip op. at 10.  I disagree.  The majority has held that petitioner's notice of appeal was not timely,

because it was filed before the trial court had resolved all related claims (and was filed without Rule 304(a) language). This holding, as with most any appellate court holding, did not retroactively change the law, but rather articulated the law that was in effect throughout this litigation. Thus, the majority has held that the notice of appeal was ineffective as of the date it was filed. It may be true that there was an appeal pending as of the time of the trial court's May 23 order, but, by itself, the fact that we can say there was "an appeal pending" tells me very little. Indeed, the fact that there was an appeal pending does not necessarily mean that either party was in a position to challenge the trial court's May 23 order. Quite to the contrary, ignoring the amendment to Rule 303(a) (as I would do here), under the majority holding regarding Kozloff, the only dispute to be settled in this appeal should be whether we have appellate jurisdiction. By holding that we would not have appellate jurisdiction over petitioner's appeal under the rules in place prior to the recent amendment to Rule 303(a), the majority implicitly holds that the parties could not challenge the trial court's May 23 order, and thus that the order was " 'no longer subject to review or modification' " (emphasis omitted) (slip op. at 6, quoting Evans, 689 F.2d at 1296). Accordingly, the parties obtained a "vested right" in the trial court's May 23, 2006, judgment 30 days after it was entered. The subsequent change to Rule 303(a) cannot operate retroactively to deprive them of that right.

I recognize that, in Commonwealth Edison, our supreme court adopted the United States Supreme Court's holding in Landgraf, which stated that the Supreme Court had "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." Landgraf, 511 U.S. at 274, 128 L. Ed. 2d at 258, 114 S. Ct. at 1502. However, the rationale for this statement was that "[a]pplication of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to

hear the case.' [Citation.]" Landgraf, 511 U.S. at 274, 128 L. Ed. 2d at 258, 114 S. Ct. at 1502. The question here is not whether an amendment may change the tribunal that may hear a pending suit, but rather whether an amended rule may extend jurisdiction to review a judgment that had previously become unreviewable due to the lapse of appellate jurisdiction under prior law.[9]

The majority responds to the points I raise by characterizing my position as suggesting that a litigant obtains a vested " 'right' to a dismissal of the appeal for lack of jurisdiction." Slip op. at 8. This is not my position. As noted above, I believe that the parties obtained a vested right in the trial court's final judgment. A consequence of this right is that this appeal must be dismissed for lack of jurisdiction.

The majority next argues that, even if there is a vested right at issue here, it is not a right the parties " 'possessed when [they] acted.' " Slip op. at 8. I am not sure what "action" requirement for vested rights the majority seeks to invoke with this language, but it is not a requirement with which I am familiar.

Finally, the majority responds to the points I make above by arguing that any vested right to a final judgment here is "merely the dubious 'right' to shield a potentially erroneous judgment from review." Slip op. at 9. The majority goes on to opine that a litigant's interest in an "erroneous" judgment is less than the interest in a "correct" judgment. Apparently, then, to the majority, the "correctness" of the trial court's judgment helps dictate whether we have jurisdiction to review it. The bootstrapping problem here is obvious. As difficult as it is to advocate something that is

_____

[9]With one possible exception, in all of the cases cited in Landgraf for the above quote, the jurisdictional change came before a final judgment had been entered. The majority cites the possible exception, Stevens v. Cherokee Nation.

"merely dubious," I must observe that the majority correctly notes, "if an erroneous judgment is not appealed, then it remains a final judgment not subject to review." Slip op. at 9. The majority has held that the judgment here was not timely appealed. Thus, erroneous or not, it "remains a final judgment not subject to review." Slip op. at 9.

The majority suggests that our determination as to whether we have jurisdiction to decide an appeal "is made at the time of decision, not when the appeal is initially filed." Slip op. at 10. That may very well be true, but, as I note above, in most cases an appellate decision does not change the law but instead only articulates it.[10] Though the parties must await our decision for a binding determination as to whether there is appellate jurisdiction, the jurisdictional rules in place at the relevant time here (according to the majority holding under Kozloff) dictated that the time for appeal lapsed and thus granted the parties a vested right in the unassailable final judgment of the trial court. When jurisdiction lapsed, we retained only the power to determine our own jurisdiction to decide the merits of this appeal, not the power to decide the merits of this appeal.

Just as with its holding regarding appealability of judgments on postdissolution petitions, the majority's position on retroactivity could create practical problems. Suppose two trial courts were to enter final judgments disposing of two causes of action, and, in both cases, the plaintiffs appeal 31 days after the final judgments, with each case being assigned to a different panel of judges on appeal. Suppose, in the first case, the panel, due to either judicial diligence or prompting from the parties, quickly dismisses the appeal, but, in the second case, the panel's deliberations extend for an additional month. Further suppose that, during that month, Rule 303 is modified so that a party has

---

[10]I express no opinion on whether a different rule should apply where an appellate decision overrules laws, rules, or previous cases regarding appellate jurisdiction.

35 days to appeal a final judgment. Under the majority's rule, the panel in the second case would acquire jurisdiction by virtue of the delay in deciding the case. Thus, the parties' rights would be determined by the speed with which the appellate court decides their appeals. This does not seem to me to be a fair result, yet it is the result the majority decision dictates.

In fact, the parties here are in a situation very similar to the parties in my hypothetical. The majority discussion indicates that, were it not for the May 2007 amendment to Rule 303(a), it would have held that we lacked jurisdiction over this case. However, taking the amendment into account, it concludes that we have jurisdiction, and it reverses and remands the cause. This appeal was filed and briefed long before the amendment to Rule 303(a) took effect, yet, because we did not dispose of this case prior to the amendment, it has changed our result. The touchstone of the concept of "vested rights" is the " 'fairness or unfairness of applying the new *** rule to affect interests which accrued out of events which transpired when a different prior rule of law was in force' " (Commonwealth Edison, 196 Ill. 2d at 47, quoting Moore, 95 Ill. 2d at 242 (Ryan, C.J., specially concurring, joined by Underwood and Moran, JJ.)), and the result here is not fair.

For the foregoing reasons, I disagree with the majority on two points. First, I disagree with its decision to resolve the conflict between Carr and Alyassir by following neither and instead creating a new rule, based on Kozloff, that a postdissolution petition raises a claim in the original dissolution action for appellate jurisdictional purposes. I would follow Carr and hold that a postdissolution petition starts a new action and thus that petitioner's notice of appeal was timely. Second, assuming that the majority is correct that petitioner's notice of appeal was untimely, I disagree with the majority's conclusion that the recent amendment to Rule 303(a) should apply retroactively to confer us jurisdiction over this appeal where it otherwise would be lacking. Left to

my own devices, I would hold that we have jurisdiction over this appeal pursuant to petitioner's timely notice of appeal, and I would not reach the issue of whether Rule 303(a) applies retroactively.